THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DORINA C.[1], | ) | |
| | ) | No. 25 C 1099 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Chief Judge Virginia M. Kendall |
| | ) | |
| FRANK BISIGNANO, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of Defendant

Frank Bisignano[2], the Commissioner of the Social Security Administration ("SSA"), denying

Plaintiff Dorina C.'s claims for supplemental security income. Plaintiff requests that the Court

reverse the Commissioner's decision and remand the case to the SSA. (Dkt. 15 at 15). For the

reasons below, the Court remands the case to the SSA for further proceedings [15].

## BACKGROUND

### I.     Supplemental Security Income Benefits

Title XVI of the Social Security Act ("SSA") provides supplemental security income

("SSI") benefits "to financially needy individuals who are aged, blind, or disabled regardless of

their insured status." 42 U.S.C. § 1381 *et seq.*; *see also Smith v. Berryhill*, 587 U.S. 471, 475

(2019). Under the SSA, a person is disabled if they have an "inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death or which has lasted or can be expected to last for a continuous period

---

[1] In accordance with Internal Operating Procedure 22 – Privacy in Social Security Opinions, the Court refers to Plaintiff only by her first name and the first initial of her last name.

[2] On May 19, 2025, Bisignano was automatically substituted as the Defendant pursuant to Federal Rules of Civil Procedure Rule 25(d) after being sworn in as the Commissioner of the SSA. (Dkt. 11).

1

of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). When the SSA denies a claim for disability benefits, a claimant who wishes to contest that decision may seek a hearing before an administrative law judge ("ALJ"). *See* 20 CFR § 404.900(a)*; see also Carr v. Saul*, 593 U.S. 83, 85 (2021).

To determine whether a claimant is disabled, an ALJ must undertake a five-step inquiry by evaluating: (1) whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the severe impairment meets or equals one of the impairments listed by the Commissioner; (4) whether the claimant can perform her past relevant work; and (5) whether the claimant is able to engage in another type of work existing in a significant number of jobs in the national economy. 20 C.F.R. §§ 404.1520, 416.920(a)(4); *see also Fetting v. Kijakazi*, 62 F.4th 332, 336 (7th Cir. 2023). Between the third and fourth steps, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the claimant's maximum work capability. 20 C.F.R. § 404.1520(e); *see also Pufahl v. Bisignano*, 142 F.4th 446, 453 (7th Cir. 2025) (internal citations omitted). The burden of proof is on the claimant for the first four steps. *Fetting*, 62 F.4th at 336 (citing *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000)). At step five, the burden shifts to the SSA to show that "there are significant numbers of jobs in the national economy for someone with the claimant's abilities and limitations." *Ruenger v. Kijakazi*, 23 F.4th 760, 761 (7th Cir. 2022) ;(citing 20 C.F.R. § 416.960(c)(2). The steps are sequential; an affirmative answer at step three or step five results in a finding that the claimant is disabled. *Craft v. Astrue,* 539 F.3d 668, 673–74 (7th Cir.2008).

## II.   Plaintiff's SSI Application

Dorina C. suffers from chronic obstructive pulmonary disease ("COPD"), emphysema, peripheral neuropathy, degenerative disk disease, disc herniation, sciatica, insomnia, major

depressive disorder, post-traumatic stress disorder ("PTSD"), and generalized anxiety disorder. (Dkt. 8-1 at 81, 112). She is in her early fifties, is homeless, has a 12th-grade education, and previously worked as a bell ringer, inspector, and packer. (*Id.* at 80-81, 87). On April 27, 2022, Plaintiff applied for SSI benefits, alleging a disability onset of April 1, 2020. (*Id.* at 230-35). After her application was denied initially and on reconsideration, (*Id.* at 108-112, 119-121), she received a hearing before ALJ David Skidmore in June 2024. (*Id.* at 15-25).

### A. ALJ Hearing

ALJ Skidmore held a supplemental hearing on April 8, 2024, in which Plaintiff and vocational expert Diamond Warren testified. (Dkt. 8 at 32). The ALJ held an initial hearing on December 5, 2023, but continued it to allow Plaintiff to submit additional records. (*Id.* at 69-78). At the supplemental hearing, Plaintiff testified that she worked as a packer at a candy factory until March 2020. (*Id.* at 41). She stated that she cannot do that work anymore because she cannot bend or lift due to pain and has issues with her grip. (*Id.* at 43). She explained that she has had hand issues for approximately ten years; she was diagnosed with carpel tunnel and experiences numbness and pain in both hands which make it difficult for her to grip anything. (*Id.* at 43-44). Plaintiff also testified that she has pain in her lower back and hips that make it difficult for her to bend, lift, or sit for long periods of time. (*Id.* at 43, 47-49, 51). She stated that she struggles to walk short distances and can only stand for two-to-three minutes. (*Id.* at 48-49). She also described a history of falling due to her leg "go[ing] out." (*Id.* at 59). She testified that she uses a cane at the recommendation of her doctors, which helps her sit and walk. (*Id.* at 45-49, 59). She also stated that she has pain in her left shoulder that makes it difficult to reach in any direction. (*Id.* at 58). Plaintiff further testified that she underwent physical therapy for approximately three months, but

it did not help her hip and back pain. (*Id.* at 49). She takes pain medications for her pain, but they do not help. (*Id.* at 50-51).

Plaintiff also testified that she has COPD, which she treats with medications. (*Id.* at 53). She explained that fumes and odors will trigger flare-ups of her COPD symptoms. (*Id.* at 54-55). She further testified that she has anxiety, depression and PTSD. (*Id.* at 56). She stated that she has difficulty concentrating because of these issues. (*Id.* at 57). She testified that she has been taking medication for her mental health conditions since 2014. (*Id.* at 56). Plaintiff also told the ALJ that she has insomnia, which she treats with medication. (*Id.* at 50).

Examining the vocational expert, the ALJ asked about the work capability of a hypothetical person with the same age, education, and work history as Plaintiff who could perform light work with environmental limitations of no concentrated exposure to temperature extremes, wetness, humidity, fumes, odor, dust, gases, or poorly ventilated areas; no ladder, rope, or scaffold climbing; and no more than occasional ramp and stair climbing, stooping, kneeling, crouching, and overhead reaching on the left. (*Id.* at 61-62). The expert opined that such an individual could not perform Plaintiff's past work but could work as a cleaner and marker. (*Id.* at 62). She stated that there are approximately 175,00 marker jobs and 13,000 cleaner jobs in the national economy. (*Id.*). The expert testified that her conclusion about the available jobs would remain the same if the hypothetical individual was also limited to frequent handling and fingering. (*Id.* at 62-63). If the same individual was limited to no more than occasional handling and fingering, the expert opined that she could not perform the cleaner and marker jobs. (*Id.* at 63). The ALJ concluded that if the hypothetical individual was sedentary, she would be considered disabled. (*Id.*). The ALJ did not pose any questions to the vocational expert about mental limitations. (*Id.* at 61-63).

On cross-examination, Plaintiff's counsel asked the vocational expert if the same jobs would be available if the limitation of occasional reaching in all directions with the left upper extremity was added to the original hypothetical posed by the ALJ. (*Id.* at 64). The expert opined that the jobs of cleaner and marker would be ruled out. (*Id.* at 64). When asked about the outcome if the hypothetical individual used a cane for balancing and ambulation, the expert testified that all jobs at the light work level, including cleaner and marker, would be ruled out. (*Id.*). If the hypothetical individual was limited to no exposure instead of no concentrated exposure to the identified environmental factors, the expert testified that the only available light job would be marker or mail clerk. (*Id.* at 65). If the hypothetical individual was limited to no perfumes, lotions, or other respiratory irritants, the expert stated that no jobs would be available. (*Id.* at 65-66). Finally, when asked what jobs would be available to an individual who cannot concentrate, has poor memory, and needs redirection at least three additional times than normal direction, the expert testified that all work would be eliminated. (*Id.* at 66).

### B.  The ALJ's Decision

On June 28, 2024, the ALJ issued a decision finding Plaintiff not disabled and denying her application for SSI. (Dkt. 8-1 at 25). The ALJ applied the required five-step analysis under 20 C.F.R. § 404.1520(a). (*Id.* at 16). At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since March 28, 2022. (*Id.* at 17). Next, the ALJ determined that Plaintiff has severe impairments of bilateral hip arthritis, degenerative disc disease of the lumbar spine, and COPD, while her mental impairments of alcohol use disorder, anxiety, and depression are not severe. (*Id.* at 17-19). He found that Plaintiff has only mild limitations in four functional areas—understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (*Id.*). At the third

5

step, the ALJ concluded that Plaintiff's impairments do not equal a listed impairment under 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. (*Id.* at 19-20).

The ALJ then determined Plaintiff has an RFC to perform light work while avoiding concentrated exposure to temperature extremes, wetness, humidity, fumes, odors, dust, gases, or poorly ventilated areas. (*Id.* at 20). Additionally, he found that Plaintiff cannot climb ladders, ropes, or scaffolds, and can only occasionally climb ramps and stairs. (*Id.*). She is further limited to occasional stooping, kneeling, and crouching, and no more than occasional overhead reaching on the left and frequent handling and fingering. (*Id.*). Despite finding mild mental impairments at step two, the ALJ did not include any mental limitations in Plaintiff's RFC. (*Id.* at 20-24). He found opinions by the State's consultative doctors to be persuasive with respect to Plaintiff's postural and environmental limitations but concluded that the treatment record did not support a finding of a "severe mental impairment." (*Id.* at 23-34). The ALJ dismissed Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms as "not fully consistent" with the evidence in the record. (*Id.* at 24).

At step four, the ALJ relied on the vocational expert's testimony to find that, given her RFC, Plaintiff cannot perform her past relevant work. (*Id.* at 24). At step five, based on the expert's testimony and Plaintiff's RFC, the ALJ determined that Plaintiff can work as a cleaner, marker, and mail clerk, and that these jobs exist in significant numbers nationally. (*Id.* at 25). Accordingly, the ALJ concluded that Plaintiff was not disabled. (*Id.*). The Appeals Council denied Plaintiff's request for review of the ALJ's decision. (*Id.* at 1). Plaintiff now seeks judicial review of the ALJ's decision. (Dkts. 1, 15).

**LEGAL STANDARD**

Section 405(g) provides, in relevant part, that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). On review, the Court may affirm, modify, or reverse the Commissioner's decision with or without remanding the case for a rehearing. *Id.* It is not the Court's job to "reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination." *Cain v. Bisignano*, 148 F.4th 490, 496 (7th Cir. 2025) (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)). The Court will reverse an ALJ's decision "only if it is the result of an error of law or it is not supported by substantial evidence." *Crowell v. Kijakazi*, 72 F.4th 810, 813 (7th Cir. 2023).

The substantial evidence standard is a low bar. *See Thorton v. King*, 127 F.4th 1078, 1081 (7th Cir. 2025); *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). Substantial evidence is "more than a mere scintilla," it means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 587 U.S. at 103; *Fitschen v. Kijakazi*, 86 F.4th 797, 802 (7th Cir. 2023). To meet the standard, the ALJ "need not address every piece of evidence, but she must build an accurate and logical bridge from the evidence to her conclusion." *Martin v. Kijakazi*, 88 F.4th 726, 729 (7th Cir. 2023) (citing *Clifford*, 227 F.3d at 872).

**DISCUSSION**

Plaintiff challenges the ALJ's decision on three grounds, arguing that the ALJ: (1) erred in finding that her mental impairments are not severe and failed to account for her mental limitations when determining her RFC; (2) did not adequately consider medical evidence regarding her limitations on sitting, standing, reaching, and handling; and (3) erred in discrediting her subjective statements. (Dkt. 15 at 9-15); (Dkt. 17 at 2-10).

7

First, Plaintiff argues that the ALJ erred at step two of his analysis in finding that her mental limitations were non-severe and in failing to account for those limitations at the RFC assessment stage. (Dkt. 15 at 11-14). Beginning with Plaintiff's first argument, the Court does not find that the ALJ's step two analysis requires reversal or remand. If a claimant has a medically determinable mental impairment, the ALJ must document that finding and rate the degree of functional limitation from none to extreme in four broad functional areas. *Craft*, 539 F.3d at 674 (citing 20 C.F.R. § 404.1520a(c)(3)). If the ALJ rates a limitation as "none" or "mild," the ALJ will "generally conclude that [a claimant's] impairment is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities[.]" 20 C.F.R. § 404.1520a(d)(1).

Here, the ALJ conducted a detailed analysis of Plaintiff's mental impairments at step two, as required, and determined that she had only mild limitations in all four functional areas. (Dkt. 8-1 at 17-19). Any error the ALJ may have made at this step was harmless. "Step two is merely a threshold inquiry; so long as one of the claimant's limitations is found to be severe, error at that step is harmless." *Ray v. Berryhill*, 915 F.3d 486, 492 (7th Cir. 2019). Here, ALJ Skidmore determined that Plaintiff had other severe impairments—bilateral hip arthritis, degenerative disc disease of the lumbar spine, and COPD. (Dkt. 8-1 at 17). This allowed his analysis to proceed to the next step. *See Arnett v. Astrue,* 676 F.3d 586, 591 (7th Cir. 2012) ("[E]ven if there was a mistake at Step 2, it does not matter. . . . an ALJ must continue on to the remaining steps of the evaluation process as long as there exists even *one* severe impairment.") (emphasis in original).

The Court does, however, find error in the ALJ's assessment of Plaintiff's RFC. The ALJ did not include any mental limitations in Plaintiff's RFC and failed to adequately explain that decision. ALJ Skidmore acknowledged that the state agency's consulting examiners determined

that Plaintiff's learning disorder and PTSD were severe impairments yet did not find these opinions persuasive because "the treatment record does not support the finding of a severe mental impairment." (Dkt. 8-1 at 23-24). First, the ALJ should have considered all of Plaintiff's mental limitations at this stage, regardless of whether he agreed that they were severe. *See, e.g., Krug v. Saul*, 846 F. App'x 403, 406 (7th Cir. 2021) ("When determining a claimant's residual capacity to work, the ALJ must consider in combination all limitations on a claimant's ability to work, including those that are not individually severe."); *Judy D. v. Saul*, 2019 WL 3805592, at *4 (N.D. Ill. Aug. 13, 2019) ("Although a mild limitation in an area of mental functioning does not necessarily prevent an individual from securing gainful employment, the ALJ must still affirmatively evaluate the effect of that limitation on the claimant's RFC.") (internal citations omitted). ALJ Skidmore's brief conclusion in the RFC assessment that Plaintiff does not have a severe mental impairment together with the lack of mental limitations in the RFC implies that he did not consider non-severe limitations in his analysis. *See Ray*, 915 F.3d at 492 (Even if an ALJ does not considered a claimant's mental impairments to be severe at step two, "the ALJ must later consider the limitations imposed by all impairments, severe and non-severe.")

Second, any analysis of Plaintiff's mental impairments, severe or not, was not sufficient because the ALJ did not adequately evaluate the medical opinions in the record. "To determine the persuasiveness of a medical opinion, an ALJ must consider the following factors: supportability, consistency, the medical professional's relationship with the claimant (including the length of the treatment relationship, frequency of examinations, and purpose and extent of the treatment relationship), specialization, and other facts that tend to support or contradict a medical opinion." *Cain*, 148 F.4th at 496-97 (citing 20 C.F.R. § 416.920c(c)(1)-(5)). An ALJ must explain their consideration of the supportability and consistency factors because they are the most important to

the medical opinion analysis. *Id.* For supportability, an ALJ must look at the extent to which the relevant and objective medical evidence supports the medical opinion. § 416.920c(c)(1). To determine consistency, an ALJ must consider the extent to which the medical opinion is consistent with other medical evidence in the record. § 416.920c(c)(2).

In determining whether a medical opinion is supported by and consistent with other evidence in the record, an ALJ is subject "to only the most minimal of articulation requirements." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024). That is, the "ALJ need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Id.* (citations omitted). While minimal, this standard requires the ALJ to "confront the evidence that does not support [his] conclusion and explain why it was rejected." *Stephens v. Berryhill*, 888 F.3d 323, 329 (7th Cir. 2018) (quoting *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004)).

ALJ Skidmore concluded that the consulting examiners' opinions regarding Plaintiff's mental impairments were not supported by the record, but he did not specify what portions of the treatment record were inconsistent with their opinions. In his summary of Plaintiff's medical records, the ALJ noted instances where Plaintiff's treating physicians indicated that Plaintiff reported no symptoms of depression or anxiety, had "normal mental status signs," and that her attention was "alert." (Dkt 8-1 at 21-23). Presuming that the ALJ relied on this evidence in reaching his conclusion, doing so ignored the Seventh Circuit's repeated admonition that "a person who suffers from mental illness will have better days and worse days, so a snapshot of any single moment says little about her overall condition." *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011) (citing cases).

Furthermore, elsewhere in the ALJ's summary, he points out that other physicians noted that Plaintiff was "scattered," that her "sleep issues impacted her ability to be reliable during the day and re-engage employment," and that she was anxious with "thought content" that "included ruminations." (Dkt. 8-1 at 23). Yet, the ALJ did not explain why he discounted these observations. While the ALJ included a lengthy recitation of Plaintiff's medical records in his RFC assessment he failed to build a logical bridge from that evidence to his conclusion. *See, e.g.*, *Chuk v. Colvin*, , 2015 WL 6687557, at *8 (N.D. Ill. Oct. 30, 2015) ("[Summarizing a medical history is not the same thing as analyzing it, in order to build a logical bridge from evidence to conclusion."); *Mandrell v. Kijakazi*, 25 F.4th 514, 518 (7th Cir. 2022) ("[W]e are convinced that the ALJ did not adequately connect the dots between the RFC he found and the deficits that he also acknowledged."); *Tom G.*, 2023 WL 6214102, at *5 (holding that it is insufficient for an ALJ to "simply offe[r]" information without tying it to his RFC determination).

Additionally, the ALJ did not acknowledge that the consulting examiners noted Plaintiff's "immediate memory deficit, poor fund of information, problems abstracting and judgement issues." (*Id.* at 81). Nor did the ALJ address Plaintiff's testimony that she struggled to concentrate because of her mental impairments. (*Id.* at 57). Perhaps the ALJ found this information unreliable or unconvincing, but "the Court cannot infer reasoning from silence." *Tom G. v. Kijakazi*, 2023 WL 6214102, at *5 (N.D. Ill. Sept. 25, 2023). Moreover, the ALJ "was not permitted to cherry-pick from those mixed results to support a denial of benefits." *Scott v. Astrue*, 647 F.3d 734, 742 (7th Cir. 2011); *see also Stephens*, 888 F.3d at 329 ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding."); *Lothridge v. Saul*, 984 F.3d 1227, 1234 (7th Cir. 2021) ("An ALJ need not address every piece of evidence, but she may not

ignore entire swaths of it that point toward a finding of disability."). While it is not the role of this Court to displace the ALJ's judgment with its own factual findings, it "cannot uphold an administrative decision that failed to explain the outcome adequately." *Lothridge*, 984 F.3d at 1233.

Bisignano argues that the ALJ did not err in omitting discussion of some of the consulting examiners' findings because they are "checkbox" ratings that do not qualify as an "actual RFC assessment." (Dkt. 16 at 8). The consulting psychologists noted that Plaintiff has a moderate mental limitation in concentrating, persisting, and maintaining pace; understanding and remembering instructions; and maintaining attention and concentration for extended periods. (Dkt. 8-1 at 82-87). The examiners also concluded in their psychological assessment that Plaintiff "retains the functional capacity to engage in vocational activities which requires some skills but not complex duties." (*Id.* at 87). Bisignano contends that only the latter conclusion is part of the examiners' opinions, not the former observations. (Dkt. 16 at 8). The "checkbox" observations by the consulting psychologists are "medical evidence which cannot just be ignored" in the RFC assessment. *See Cain*, 148 F.4th at 498 (citing *Varga v. Colvin*, 794 F.3d 809, 816 (7th Cir. 2015)); *DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019) ("[E]ven if an ALJ may rely on a narrative explanation, the ALJ still must adequately account for limitations identified elsewhere in the record, including specific questions raised in check-box sections of standardized forms. . ."). ALJ Skidmore did not acknowledge these check-box observations at all, let alone adequately compare them to other evidence in the record. *Kenneth L. v. Saul*, 2021 WL 4516400, at *3 (N.D. Ill. Jan. 5, 2021) (finding that an RFC assessment did not adequately address a plaintiff's mental limitations where the ALJ relied only on state psychologists' narrative opinions and ignore their check-box observations).

Bisignano also argues that any error the ALJ made in omitting mental limitations from the RFC assessment was harmless, such that reversal is not warranted. (Dkt. 16 at 7-9). At the hearing, the vocational expert testified that a hypothetical individual with Plaintiff's same age, education, and work history who cannot concentrate, has poor memory, and needs redirection at least three additional times than normal direction could not perform any available jobs in the economy. (*Id.* at 66). Based on this testimony, Plaintiff may have been determined to be disabled if the ALJ had included those mental limitations in his RFC assessment. Thus, the ALJ's error was not harmless. *Petelle v. Berryhill*, 2017 WL 1208442, at \*6 (N.D. Ill. Apr. 3, 2017) (finding that the ALJ's failure to include any mental limitations in the plaintiff's RFC was not harmless where doing so would lead to a determination that the plaintiff was disabled); *Tom G.*, 2023 WL 6214102, at \*5 (reversing ALJ's denial of disability insurance where the ALJ's choice not to include mental limitations in the plaintiff's RFC has a material effect on the outcome of the disability determination).

Accordingly, the Court reverses the ALJ's decision and remands the case for further proceedings due to the ALJ's error in omitting Plaintiff's mental limitations from his RFC assessment without adequate explanation. *See e.g.*, *Vrdoljak v. Kijakazi*, 665 F. Supp. 3d 923, 931 (N.D. Ill. 2023) (remanding case where ALJ omitted the plaintiff's mental limitations from the RFC assessment and did not explain why); *Lawonda P. v. Kijakazi*, 2021 WL 3418847, at \*6 (N.D. Ill. Aug. 5, 2021) (same where ALJ did not sufficiently consider the plaintiff's non-severe mental limitations when determining her RFC). Since this error requires remand, the Court need not address Plaintiff's other criticisms of the ALJ's decision. *See, e.g.*, *Charles N. v. O'Malley*, 2024 WL 3581902, at \*8 (N.D. Ill. July 30, 2024); *Gordon v. Saul*, 2021 WL 105804, at \*5 (N.D. Ill. Jan. 11, 2021); *T.E. v. O'Malley*, 2024 WL 3617492, at \*1 n.2 (N.D. Ill. Aug. 1, 2024). Nonetheless, the Court reminds the ALJ that he "has an obligation to evaluate every medical

13

opinion and explain the weight given to the opinion." *Georgios A. v. Kijakazi*, No. 20-cv-2729, 2022 WL 1004249, at *5 (N.D. Ill. Apr. 4, 2022). Additionally, an ALJ must assess a claimant's subjective statements and justify his evaluation of those statements with "specific reasons supported by the record." *See Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013); *see also* 20 C.F.R. § 404.1529(a) (an ALJ must consider all of a claimant's statements about their symptoms and, in determining the intensity and persistence of those symptoms, must consider all of the available evidence).

## CONCLUSION

For the reasons above, the Court reverses the Commissioner's decision denying Plaintiff's application for supplemental security income and remands the case to the Social Security Administration for further proceedings consistent with this opinion [15]. The Clerk is directed to enter judgment and terminate the case.

Virginia M. Kendall
United States District Judge

Date: March 23, 2026

14